UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANDREA MCSWAIN,

                Plaintiff,

    v.

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.,
                Defendant.
------------------------------------------------------------X

Civil Case No. 15-cv-9083

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

Plaintiff Andrea McSwain, by and through her attorneys, Cuti Hecker Wang LLP, for her Complaint alleges as follows:

## INTRODUCTION

1. Andrea McSwain was a dedicated Con Edison employee for nearly twelve years, during which time she was the only African-American female working in the field in the Westchester Gas Operations and Construction department.

2. Like many other women recruited to work in the non-traditional area of field work at Con Edison, Ms. McSwain was subjected to disparate treatment because of her sex as well as her race. For years, Ms. McSwain requested to receive training, including in order to operate diggers and other large machines, to support her advancement in the Company and to afford her more opportunities for overtime hours. But these repeated requests were consistently ignored or denied, while less experienced white, male employees were routinely given such training without even having to ask, or were permitted to use large machines without proper training.

3. Because of her sex and race, and in retaliation for her complaining about the disparate treatment, Ms. McSwain was likewise subjected to numerous incidents of overly

harsh punishment for minor, alleged transgressions of Company policy, while white, male employees were not punished for the same types of actions.

4. Ultimately, Ms. McSwain was terminated because of this biased and retaliatory treatment. Ms. McSwain was physically unable to complete a portion of a qualification test while she was still recovering from wrist surgery. Rather than provide her with a reasonable accommodation for this disability, such as postponing the test until her recovery was complete – something that would have been afforded her had she been a white man, or had she not complained about earlier discriminatory treatment – Con Edison fired her after twelve years of service.

5. As a direct result of Con Edison's unlawful discrimination and retaliation, Ms. McSwain lost opportunities to earn significant overtime and other compensation, was ultimately wrongfully terminated, and has suffered significant stress and emotional harm, including heart palpitations, daily headaches, and insomnia.

6. Con Edison's unlawful treatment of Ms. McSwain must be remedied.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367 and pursuant to 42 U.S.C. § 3613.

8. Venue is properly lodged in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

## JURY DEMAND

9. Plaintiff hereby demands a trial by jury.

## PARTIES

10.    Plaintiff Andrea McSwain is a 57-year-old African-American woman who resides in Bronx, New York.  At all relevant times, Plaintiff was employed by Consolidated Edison Company of New York, Inc.

11.    Defendant Consolidated Edison Company of New York, Inc. ("Con Edison", the "Company", or "Defendant") is a New York Corporation headquartered at 4 Irving Plaza, New York, New York 10003.

## FACTUAL ALLEGATIONS

12.    Plaintiff Andrea McSwain was hired by Con Edison in June 2001 as a General Utility Worker ("GUW") in the Gas Construction Division.  She obtained the title of Mechanic B in 2003 and qualified as Mechanic A in 2006.  Upon information and belief, until her termination in March 2013, Ms. McSwain was the only African-American female working in the field in the Westchester Gas Operations and Construction department.

**Discriminatory Refusal to Train**

13.    Throughout Ms. McSwain's time at Con Edison, the Company refused, because of her sex and race, to provide her with the training necessary to advance within the Company.  This discriminatory treatment denied Ms. McSwain the opportunity to increase her pay through increased overtime opportunities and other advancement.

14.    Ms. McSwain was for years partnered with male employees who were either unwilling to provide any on-the-job training to her (though happy to do so for other male employees) or who were so unskilled that they were less knowledgeable than Ms. McSwain.

15.    For example, as a GUW, Ms. McSwain was partnered for over a year with an A Mechanic who repeatedly and consistently refused to teach Ms. McSwain anything, even

3

though she repeatedly asked him to and even though she frequently observed him teaching younger and less experienced male GUWs how to do work tasks.

16. On another occasion, when Ms. McSwain was a B Mechanic, she was partnered for over a year with a man who appeared not to know how to conduct even basic tasks, even though he was supposed to be teaching her.

17. Ms. McSwain repeatedly complained to Con Edison management and requested different partners, but her requests were repeatedly denied.

18. Beyond the failed partnering that deprived Ms. McSwain of important daily learning opportunities, Ms. McSwain's superiors denied her repeated requests for specific types of training on the basis of sex and/or race.

19. For example, Ms. McSwain repeatedly requested to be trained to operate large machines such as the digger and the pick up truck digger. Being skilled in using those machines affords considerably greater opportunities for overtime pay, which is a major source of income for Con Edison mechanics. In one instance, in the summer of 2003, Ms. McSwain asked Dennis Teehan, the planner on site, for training on the use of the pick up truck digger. Mr. Teehan gave a response that unequivocally told Ms. McSwain that she could not be trained on that piece of equipment and therefore could never use it.

20. Ms. McSwain often observed less experienced white, male colleagues working the diggers without any training at all and/or receiving the training that Ms. McSwain had requested so many times and been repeatedly denied. In May or June 2007, after one instance of observing white, male employees using the digger machines without having been trained, Ms. McSwain called a safety "time out" to ensure that individuals working the machines had been properly instructed on their use. Ms. McSwain specifically pointed out that it was

unfair that so many men, including younger men with less experience than her, were operating machines that she had repeatedly requested to be trained on.  Ms. McSwain was clearly making a point that she was being treated differently on the basis of her sex.  Indeed, Ms. McSwain subsequently made complaints to Con Edison's Human Resources department, as well as its internal EEO office, again complaining about the disparate treatment.  Rather then ever address the issue substantively, Con Edison instead retaliated against her for making the complaint, and scheduled additional trainings on the digger machines, which were provided to less experienced male employees and *still* not to Ms. McSwain.

21. When Ms. McSwain confronted Con Edison management about the discriminatory refusal to train her that persisted and deprived her of the opportunity to earn overtime pay, they responded by scheduling additional trainings on machines that Ms. McSwain hoped to learn to use and affirmatively excluding her from the scheduled trainings.

22. Ms. McSwain continued to protest internally the unfair refusal to train her. Meanwhile, Con Edison continued to conduct the trainings without permitting her to participate in the training.  Finally, years after first requesting to be trained on the digger machines, Ms. McSwain received training on the smaller of the two diggers in December 2007.  She continued to observe less experienced white, male colleagues operating the larger pick up digger.

**Retaliatory Conduct**

23. As set forth above, prior to 2008, Ms. McSwain had repeatedly complained of the sex discrimination at Con Edison internally to Con Edison supervisors and Con Edison's internal EEO department.  On February 28, 2008, Ms. McSwain filed a formal charge with the Equal Employment Opportunity Commission ("EEOC"), detailing all the ways she had been discriminated and retaliated against, including on the basis of race and sex.  In

5

repeated communications, both directly with the Company and through the EEOC's notice to the Company over the following years, Con Edison was fully aware of Ms. McSwain's complaints of unlawful discrimination and retaliation.

24. On November 7, 2011, after a full investigation, the EEOC made a probable cause finding regarding the discriminatory and retaliatory treatment Ms. McSwain suffered. According to the EEOC determination, Con Edison "discriminated against [Ms. McSwain and other Charging Parties] on account of their sex with respect to training opportunities and other terms, conditions or privileges of employment" and "retaliated against [Ms. McSwain and other Charging Parties] by creating a hostile work environment and failing to promote them, among other actions, because they complained about discrimination."

25. Instead of fixing the unfair and biased treatment, Con Edison only doubled down on its punishment of Ms. McSwain, both during the EEOC investigation and after its finding of probable cause. Ms. McSwain was subjected to unfair and disproportionate discipline because she had complained formally and informally about the unfair treatment she suffered because of her sex and race. She was often disciplined for things that her white, male counterparts were not disciplined for, and she was frequently given harsher discipline than her white, male counterparts. The following are only a few examples of such retaliatory and/or discriminatory treatment over the years.

26. For example, beginning in the fall of 2011, Ms. McSwain attempted to obtain training on certain topics that she knew were on the Operations Qualifications tests, and which skills were crucial to advancement within the company. Ms. McSwain was given the run-around on several occasions, and the test had to be rescheduled because she was given only three days' notice (rather than the four-to-six months required by the policy in effect at the time).

27. Ultimately, Ms. McSwain passed all aspects of the test except for three parts, after which she was given a long sit-down discussion and formal write-up that put her on warning. She was also suspended for one day. By contrast, Ms. McSwain is aware of other, male A Mechanics who, prior to January 2012, had failed portions of tests but were not given write-ups.

28. On another occasion, in April 2012, Ms. McSwain received a written warning for having the wherewithal to problem-solve a challenging situation at work. No backhoes were available for a project that required considerable digging, and Ms. McSwain tried to locate and borrow a backhoe from elsewhere in her department. Her white, male counterparts would not have been disciplined for exhibiting this type of proactive initiative.

29. That same month, Ms. McSwain was suspended for four days because she allegedly failed to show up for a class at Con Edison's Learning Center, when in fact the class had been rescheduled too late for her to learn of the change. She is not aware of any other Con Edison employee being suspended for four days because they were late to or absent from a Learning Center class.

30. Because of all the unfair, discriminatory, and retaliatory treatment, Ms. McSwain suffered physical manifestations of her stress and became quite ill. She was out on medical leave for approximately 30 days in the spring of 2012, and immediately upon her return was brought in to be disciplined again. While waiting for a meeting at which she expected to be unfairly disciplined, Ms. McSwain suffered heart palpitations and was brought by ambulance to the hospital. On or around June 12, despite a direct order from her doctor not to work because of the significant side effects she was having from a medication, her supervisor threatened her and said she would be AWOL if she did not come to work.

**Discriminatory Termination**

31. On or about August 31, 2012, Ms. McSwain underwent surgery for a wrist injury. When she returned to Con Edison, she was on light duty.

32. On or about December 14, 2012, Ms. McSwain passed two of her Operations Qualifications exams, notwithstanding the fact she had not been provided the same training opportunities as white men in her position had. For example, Ms. McSwain was never assigned or given the opportunity to work on an eight-to-ten month encroachment project that afforded substantial on-the-job training opportunities. The two tests that Ms. McSwain passed did not require her to engage in any activity that involved her wrist in any significant manner.

33. That same day, Ms. McSwain attempted to conduct a third qualification exam, called the Sidewall Fuser qualification test, while wearing a wrist brace for support following her surgery. Beyond not having received adequate training to prepare for that test, Ms. McSwain had difficulty with a particular element of the test that required that she move something in a manner that required her wrist to be placed in an angled/inclined position. Her wrist still had limited range of motion, and she was unable to move her wrist into that position, no matter how hard she tried. She attempted it multiple times but could not move her wrist into the position required to complete the test. The person conducting the test observed that Ms. McSwain was having difficulty because of her wrist injury and indicated that she could take the test again when her wrist was fully healed. Ms. McSwain spoke to her managers and informed them that her injury prevented her from completing that task until she was fully healed.

34. Nonetheless, Ms. McSwain was informed on or about March 5, 2013 that she was being terminated because of her failure to pass the Sidewall Fuser test.

35. Con Edison used Ms. McSwain's discipline record – which was the

product of the unfair, disparate and retaliatory treatment to which she had been subjected – as a further purported basis for her termination.

36. Ms. McSwain was terminated for discriminatory and retaliatory reasons.

37. On June 7, 2013, Ms. McSwain filed a supplemental formal charge with the EEOC, notifying that agency that she had now been unlawfully terminated for discriminatory and retaliatory reasons.

**Ms. McSwain Has Suffered Emotional, Psychological, and Economic Harm**

38. Ms. McSwain has suffered substantial harm as a result of the discriminatory and retaliatory treatment she has experienced as an employee of Con Edison. The repeated denials of advancement opportunities through training that Ms. McSwain requested deprived her of considerable overtime pay opportunities. These lost opportunities, along with her subsequent unlawful termination, caused significant lost wages.

39. Ms. McSwain has also suffered emotional and physical harm as a result of the discriminatory and retaliatory conduct to which Con Edison subjected her. As described above, in May 2012, the near-constant barrage of unfair treatment caused Ms. McSwain to suffer heart palpitations and required her to take 30 days' medical leave to recover. Ms. McSwain also suffered daily headaches and insomnia as a direct result of the discriminatory and retaliatory treatment by Con Edison.

**FIRST CAUSE OF ACTION**
(Unlawful Discrimination – Title VII, 42 U.S.C. § 2000e *et seq*.)

40. Plaintiff repeats and realleges the allegations in each and all of the above paragraphs as if set forth fully herein.

41. At all times relevant hereto, Con Edison was an employer as defined in Title VII and, at all times relevant hereto, Con Edison employed Plaintiff.

42. As set forth above, Plaintiff fully exhausted her claims in the EEOC, including through her charge on February 28, 2008, and a subsequent charge on June 7, 2013 in connection with her termination. On November 7, 2011, the EEOC found probable cause regarding Ms. McSwain's initial charge.

43. This action is being initiated within 90 days of Plaintiff's receipt of a Notice of Right to Sue from the EEOC.

44. Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex and race in violation of Title VII, including without limitation by denying her training opportunities on the basis of sex and race which in turn denied her opportunities for earning compensation, including overtime, and other forms of advancement, by subjecting her to disparate and harsher punishments than similarly-situated male and non-African-American employees, by unlawfully terminating her for discriminatory reasons, and for other acts as detailed above.

45. Defendant acted with malice and reckless indifference to Plaintiff's rights.

46. As a result of Defendant's sex and race discrimination, Plaintiff has been damaged and is entitled to injunctive relief, compensatory damages, plus costs and attorneys' fees and interest, and is further entitled to punitive damages.

**SECOND CAUSE OF ACTION**
(Unlawful Discrimination – New York City Administrative Code)

47. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

48. Plaintiff is an aggrieved person under New York City Administrative Code § 8-502(a).

49. At all times relevant hereto, Defendant was an "employer" within the meaning of New York Administrative Code § 8-102, employing at least four persons.

50. At all times relevant hereto, Plaintiff was a person with a "disability" within the meaning of New York Administrative Code § 8-102.

51. New York City Administrative Code § 8-107(1)(a) makes it unlawful for an "employer or an employee or agent thereof, because of the … race[,] . . . gender [or] disability … of any person … to discriminate against such person in compensation or in terms, conditions or privileges of employment."

52. The foregoing acts and practices of Defendant constitute unlawful discriminatory employment practices within the meaning of and in violation of the New York City Administrative Code.

53. As a result of Defendant's unlawful sex, race, and disability discrimination against Plaintiff, Plaintiff has suffered and continues to suffer damages including but not limited to lost income, lost future earnings, mental anguish, and emotional harm.

54. Defendant is liable for the discrimination against Ms. McSwain because it was created and fostered by Con Edison management and/or because Defendant did not take adequate steps to prevent or address discrimination.

55. Pursuant to New York City Administrative Code § 8-502(c), Plaintiff will serve a copy of this complaint within ten days of commencing the action upon the City Commission on Human Rights and Corporation Counsel.

56. Defendant acted willfully, intentionally, with malice, and in reckless indifference to Plaintiff's rights.

57. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff sustained damages alleged herein.

58. Accordingly, under the New York City Administrative Code § 8-502(a) and (f), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs, and interest.

## THIRD CAUSE OF ACTION
(Retaliation – Title VII, 42 U.S.C. § 2000e *et seq*.)

59. Plaintiff repeats and realleges the allegations in each and all of the above paragraphs as if set forth fully herein.

60. At all times relevant hereto, Con Edison was an employer as defined in Title VII and, at all times relevant hereto, Con Edison employed Plaintiff.

61. As set forth above, Plaintiff fully exhausted her claims in the EEOC. This action is being initiated within 90 days of the end of the tolling period following Plaintiff's receipt of a Notice of Right to Sue from the EEOC.

62. Defendant retaliated against Plaintiff for engaging in protected activity in violation of Title VII, including without limitation by subjecting her to baseless and disparate punishments for purported minor policy violations, by terminating her based on this unfair disciplinary record, and other acts as detailed above.

63. Defendant acted with malice and in reckless indifference to Plaintiff's rights.

64. As a result of Defendant's unlawful retaliation, Plaintiff has been damaged and is entitled to injunctive relief, compensatory damages, plus costs and attorneys' fees, and interest, and is further entitled to punitive damages.

## FOURTH CAUSE OF ACTION
(Retaliation – New York City Administrative Code)

65. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

66. Plaintiff is an aggrieved person under New York City Administrative Code § 8-502(a).

67. At all times relevant hereto, Defendant was an "employer" within the meaning of New York Administrative Code § 8-102, employing at least four persons.

68. New York City Administrative Code § 8-107(7) makes it unlawful for any person "to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, [or] (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter . . . ."

69. The foregoing acts and practices of Defendant constitute retaliation within the meaning of and in violation of the New York City Administrative Code.

70. As a result of Defendant's unlawful retaliation against Plaintiff, Plaintiff has suffered and continues to suffer damages including but not limited to lost income, lost future earnings, mental anguish, and emotional harm.

71. Defendant is liable for the retaliation Ms. McSwain suffered because it was created and fostered by Con Edison management and/or because Defendant did not take adequate steps to prevent or address discrimination.

72. Pursuant to New York City Administrative Code § 8-502(c), Plaintiff will serve a copy of this complaint within ten days of commencing the action upon the City Commission on Human Rights and Corporation Counsel.

13

73. Defendant acted willfully, intentionally, with malice, and in reckless disregard for Plaintiff's rights.

74. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff sustained damages alleged herein.

75. Accordingly, under the New York City Administrative Code § 8-502(a) and (f), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, reasonable attorneys' fees and costs, and interest.

**FIFTH CAUSE OF ACTION**
(Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq*.)

76. Plaintiff repeats and realleges the allegations in each and all of the above paragraphs as if set forth fully herein.

77. At all times relevant hereto, Plaintiff was a person with a disability, as defined in 42 U.S.C. § 12102(1).

78. As set forth above, Plaintiff fully exhausted her claims in the EEOC. This action is being initiated within 90 days of the end of the tolling period following Plaintiff's receipt of a Notice of Right to Sue from the EEOC.

79. At all times relevant hereto, Defendant was a "covered entity" and an "employer" within the meaning of 42 U.S.C. §§ 12111(2) and (5), employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

80. 42 U.S.C. § 12112(a) makes it unlawful for a "covered entity" to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

14

81. Defendant discriminated against Plaintiff on the basis of her disability in violation of the ADA, including without limitation by failing to provide reasonable accommodations for her wrist injury (of which they had notice), terminating her for failing a test that she was unable to complete due to her wrist injury, and other acts as detailed above.

82. As a result of Defendant's disability discrimination, Plaintiff has been damaged and is entitled to injunctive relief, compensatory damages, plus costs, interest and attorneys' fees, and is further entitled to punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests the following relief:

a. an order reinstating Plaintiff to her position, and enjoining Defendant from further discriminating and/or retaliating against her;

b. an order awarding compensatory damages for all lost wages, benefits, and compensation based on all discriminatory and/or retaliatory treatment, including denials of advancement and training, unlawful discipline and termination;

c. an order awarding compensatory damages for all distress, anxiety, humiliation, injury to reputation, emotional harm, pain and suffering, career, family and social disruption and other grievous harm, in an amount to be determined at trial;

d. an award of punitive damages to Plaintiff for the reckless, willful, and grossly unlawful discriminatory and retaliatory behavior;

e. an award of reasonable attorneys' fees and costs;

f. an award of interest on all categories of damages, fees and costs; and

g. such other and further relief as the Court may deem just and proper.

Dated: New York, New York
November 18, 2015

By: _____
         Mariann Meier Wang

CUTI HECKER WANG LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2600

*Attorneys for Plaintiff Andrea McSwain*